A03A0403. IN THE INTEREST OF K. W., a child.
(583 SE2d 509)

MILLER, Judge.

The parents of minor K. W. appeal from an order of the Bartow County Juvenile Court, which declared that K. W. was deprived and that the South Carolina Department of Social Services ("SCDSS") maintained legal custody of K. W. On appeal the parents contend that the juvenile court erred in (i) giving full faith and credit to prior South Carolina orders that granted legal custody of K. W. to SCDSS and physical custody of K. W. to his paternal uncle and aunt, and (ii) failing to follow a Clayton County Superior Court order that had granted custody of K. W. to his parents. We discern no error and affirm.

The record and previously unappealed orders reveal that SCDSS obtained legal and physical custody of K. W. in October 1997, after K. W.'s intoxicated mother left K. W. with a stranger. The mother was living in South Carolina with K. W. at the time and was separated from her husband, who lived in Georgia.

Following a hearing, the family court of the Fifteenth Judicial Circuit of South Carolina concluded that K. W. was to remain in SCDSS custody based on evidence that his parents had sexually molested him. In its March 10, 1998 order, the family court further required K. W.'s parents to enroll in a sexual offenders program and required SCDSS to contact the appropriate county agency in Georgia (the "Department") in an attempt to transfer the case to Georgia. No transfer would take place, however, until an additional hearing was held in South Carolina.

The parents did not comply with the March 10, 1998 order, and subsequent orders of the South Carolina family court over the next two years prohibited the parents from having any further contact with K. W. and placed K. W. with his paternal uncle and aunt in Georgia pursuant to the Interstate Compact on the Placement of Children ("ICPC"). See OCGA § 39-4-4, Art. III. SCDSS filed a petition to terminate the parents' parental rights, but a scheduled hearing on the petition was continued.

The parents then moved to dismiss or stay the termination action in South Carolina, arguing that Georgia was the proper juris-

diction for the action. In an August 2, 2001 order on the motion, the South Carolina family court agreed to transfer the termination case to Georgia. After the order was entered, however, SCDSS learned that Georgia would not accept jurisdiction of the case and moved for reconsideration of the August 2, 2001 order.

After an August 30, 2001 hearing, the South Carolina court reversed its August 2, 2001 order. Although the parents' attorneys knew by November 2001 that the August 2, 2001 order had been reversed, a written order on the reversal of the August 2, 2001 order was not filed until February 14, 2002.

On January 16, 2002, the parents filed an action for a writ of habeas corpus against K. W.'s paternal uncle and aunt in Clayton County Superior Court, arguing that K. W. should be returned to his parents. SCDSS was not made a party to this action, nor was it given notice of the action. Without any input from SCDSS, the Clayton County Superior Court granted the writ, and K. W. was returned to his parents on February 5, 2002. K. W. resided with his parents until February 13, 2002, when the Bartow County Juvenile Court entered a shelter-care order that placed K. W. in the Department's custody.

The Department filed a deprivation petition regarding K. W., and a hearing on the petition was held on March 1, 2002. In addition to presenting evidence on the present deprivation of K. W. based on the time he spent living with his parents from February 5 to February 13, the Department introduced certified copies of the prior orders entered by the South Carolina family court regarding K. W. and his parents. Counsel for the parents objected to the proceedings, arguing that the Bartow County Juvenile Court could not give full faith and credit to the prior orders of the South Carolina family court, as the South Carolina family court no longer had jurisdiction over the matter in light of the Clayton County order granting custody of K. W. to the parents. The juvenile court proceeded over counsel's objections and ruled at the end of the hearing that K. W. was deprived. In its March 10, 2002 written order regarding the hearing, the juvenile court further found that SCDSS was the legal custodian of K. W. The parents appeal from this order.

The dispositive issue on appeal is whether the juvenile court erred in concluding that SCDSS was the legal custodian of K. W. in light of the prior South Carolina orders regarding K. W. and his parents and the Clayton County Superior Court order that purported to grant custody of K. W. to his parents. We hold that the juvenile court correctly concluded that SCDSS maintained legal custody of K. W., and that the parents' arguments to the contrary are without merit.

The issue in this case is controlled by the ICPC, which has been adopted by both South Carolina and Georgia. See S.C. Code Ann. § 20-7-1980; OCGA § 39-4-4. When an agency from another state

places a child in Georgia pursuant to the ICPC, as was the case here with K. W. being placed with his paternal uncle and aunt, the agency that sent the child to Georgia

> shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child which it would have had if the child had remained in the sending agency's state, until the child is adopted, reaches majority, becomes self-supporting or is discharged with the concurrence of the appropriate authority in the receiving state.

OCGA § 39-4-4, Art. V (a).

Here SCDSS did not abdicate its jurisdiction over K. W. and was still the legal custodian of K. W. after he was placed with his paternal uncle and aunt in 1999. K. W. had not yet been adopted, nor had the South Carolina family court relieved SCDSS of its legal custody of K. W. Moreover, the parents were bound by the findings contained in the prior South Carolina family court orders, as none of these orders were appealed. See, e.g., *In the Interest of F. C.*, 248 Ga. App. 675, 677 (1) (549 SE2d 125) (2001) (out-of-state mother bound by juvenile court orders in host state of original deprivation proceedings). Thus, the trial court did not err in concluding that SCDSS retained legal custody of K. W., or in considering the previously unappealed orders of the South Carolina family court in the deprivation hearing.

The parents' filing of a habeas corpus action in Clayton County Superior Court does not change the result. Such action was not authorized under the ICPC, as the parents could not force Georgia to divest SCDSS of its jurisdiction over K. W. through the filing of their habeas action when the Department had already refused jurisdiction when asked to assume it by SCDSS. See OCGA § 39-4-4, Art. V (a) (sending agency retains jurisdiction over child unless the child is "discharged *with the concurrence* of the appropriate authority in the receiving state") (emphasis supplied). Additionally, the parents' attorneys were well aware that the South Carolina family court order transferring the case to Georgia had been reversed, even before a written order to that effect was entered or any habeas action was filed. Even if the habeas action were somehow authorized, however, the parents did not include SCDSS as a party to the action. Thus, any order from the proceedings could not have been binding on SCDSS. See *Colodny v. Krause*, 141 Ga. App. 134, 135 (1) (232 SE2d 597) (1977) ("A judgment is not conclusive as to one who was not a party to the proceeding in which it was rendered, nor as to one over whom the court acquired no jurisdiction. . . .") (citations and punctuation omitted). Indeed, to hold otherwise would allow potentially

abusive parents to wrongfully obtain custody of their children by cleverly circumventing the provisions of the ICPC through forum shopping and deliberately excluding the child's legal custodian from the proceedings. We decline to adopt such a holding here.

*Judgment affirmed. Smith, C. J., and Ruffin, P. J., concur.*

DECIDED JUNE 13, 2003.

*Harrison & Harrison, G. Hughel Harrison,* for appellants.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Assistant Attorney General, Neel & Smith, Barry S. Haney,* for appellee.