## 61149. VICKERS v. CHRYSLER CREDIT CORPORATION.

CARLEY, Judge.

The pertinent facts in the instant appeal are as follows: For the purpose of financing its automobile inventory, Ray Dodge, Inc. ("Ray Dodge") entered into a revolving loan agreement, commonly referred to as a "floor planning" arrangement, with plaintiff-appellee Chrysler Credit Corporation ("Chrysler"). As evidence of this

agreement, Ray Dodge executed a "main" promissory note in the principal amount of $400,000 payable to Chrysler on demand. When Ray Dodge desired to purchase an automobile from the manufacturer, Chrysler would make Ray Dodge an advance in the amount of the purchase price. In turn, for each new advance Ray Dodge would execute two instruments in favor of Chrysler: 1) a demand promissory note in the amount of the advance and 2) a trust receipt, purportedly granting Chrysler a security interest in the particular automobile(s) purchased with the advance. As additional security, defendant-appellant Vickers and two other individuals executed a document denominated as a "Continuing Guaranty" to Chrysler in which they, jointly and severally, guaranteed payment of all of Ray Dodge's obligations under the loan agreement.

On December 5, 1978, Chrysler filed a complaint and petition for writ of possession alleging that Ray Dodge had violated certain terms of one of the note-trust receipts underlying the loan agreement and declaring the entire outstanding sum of $158,970.84 as principal and interest under the loan agreement to be due and owing. The complaint further alleged that appellant Vickers was liable to Chrysler for the aforestated sum under the continuing guaranty agreement. Vickers filed his answer admitting the execution of the continuing guaranty agreement but denying the indebtedness as alleged in Chrysler's complaint. The trial court issued Chrysler a writ of possession with respect to Ray Dodge's inventory.

Subsequently, Chrysler moved for summary judgment against Vickers on the guaranty agreement, basing its motion upon all pleadings filed in the case and upon the second affidavit of Ferris P. Hunter, sales representative for Chrysler. Thereafter, Vickers amended his answer alleging, among other things, that Chrysler had failed to dispose of the repossessed collateral in a commercially reasonable manner. After hearing argument of counsel and after considering all pleadings, affidavits and other evidence of record, the trial judge entered findings of fact and conclusions of law, the pertinent portions of which are as follows: Chrysler realized $148,409.21 from the sale of the collateral pursuant to the court issued writ of possession. After application of the proceeds of the sale, the balance of the indebtedness of Ray Dodge was $12,719.79 principal plus $11,455.75 interest plus expenses in the amount of $1,590.00. Chrysler gave notice in accordance with Code Ann. § 20-506 of its intent to recover attorney's fees. Under the terms of the continuing guaranty agreement, Chrysler could obtain a judgment against the signers thereof without first securing a judgment against Ray Dodge. Based upon these findings, the trial court entered judgment in favor of Chrysler and against Vickers in the amount of

$25,765.54, plus $2,601.55 as attorney's fees.

1. Vickers first attacks the grant of summary judgment on the grounds that genuine issues of material fact remain especially with regard to the "commercial reasonableness" of Chrysler's disposition of the repossessed collateral. Appellant cites *Gurwitch v. Luxurest Furn. Mfg. Co.,* 233 Ga. 934, 936 (214 SE2d 373) (1975) for the proposition that "compliance with Code Ann. § 109A-9—504 (3) is a condition precedent to recovery of any deficiency between the sale price of the collateral and the amount of the unpaid balance." Vickers further argues that since Chrysler "made no showing whatsoever regarding the method, manner, time, place, etc. of the sale," summary judgment granting a deficiency judgment was improper. See generally, *Hubbard v. Farmers Bank,* 155 Ga. App. 720 (272 SE2d 510) (1980), *Wagner v. Ford Motor Credit Co.,* 155 Ga. App. 729 (272 SE2d 500) (1980). Chrysler, citing the rationale expressed in *Brinson v. Commercial Bank,* 138 Ga. App. 177 (225 SE2d 701) (1976) urges that Vickers, as a guarantor, is not entitled to rely upon the statutory obligations imposed by Code § 109A-9—504. Chrysler further argues that under the terms of the continuing guaranty agreement itself, Vickers waived any right he might otherwise have had to question the commercial reasonableness of the disposition of the collateral.

Sections 109A-9—504 (1) and (3) provide a creditor with broad alternatives for disposing of collateral after default by the debtor. However, § 109A-9—504 (3) also imposes two specific requirements on a reselling creditor. First, unless the collateral to be disposed of is of the type specifically excluded, "reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the *debtor.*" (Emphasis supplied.) Second, "every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." In the present action, the liability of Vickers is predicated upon the agreement entitled "Continuing Guaranty." For purposes of resolving the issues presented in this appeal, it matters not whether this agreement is characterized as a guaranty or suretyship obligation because, in general, the surety or guarantor may assert all defenses, with the exception of personal defenses (e.g., infancy, incapacity, bankruptcy, etc.), available to the principal. See generally, 74 AmJur2d 76-83, Suretyship, § 104-116; 38 AmJur2d 1054-1057, Guaranty, § 51-54; 13 EGL 411, Guaranty and Suretyship, § 24-25; *Escambia Chemical Corp. v. Rocker,* 124 Ga. App. 434, 440 (184 SE2d 31) (1971). Thus, in the absence of waiver or estoppel we see no reason why a guarantor may not assert the "commercially reasonable" defense which would be available to his principal, the

debtor, under 109A-9—504 (3) in an action by the secured party against the guarantor for a deficiency judgment. It is true that in construing the *notice requirement* of Code Ann. § 109A-9—504 (3) this court has held: "[T]here is nothing shown in the Uniform Commercial Code requiring such notice to be given to a guarantor." *Brinson,* supra, at 178. The extent of the holding in *Brinson,* however, was that a guarantor is not a "debtor" within the meaning of Code § 109A-9—504 (3) and, therefore, *not required* under the Code *to be notified* by the secured party of the impending sale. See *McNulty v. Codd,* 157 Ga. App. 8 (1981). *Brinson* does *not* hold that the requirements as to "commercial reasonableness" imposed upon a secured party are inapplicable or otherwise unavailable to a guarantor defending an action for a deficiency judgment. To the extent Chrysler relies upon *Brinson* for such a proposition, its reliance is misplaced.

However, we are not aware of any statutory provisions to the effect that one who guarantees payment of an indebtedness cannot *waive* his right to rely upon or cannot *estop* himself from relying defensively upon the secured party's failure to comply with the "commercially reasonable" requirements of 109A-9—504 (3). To the contrary, we have consistently recognized the fact that "[a] surety or guarantor may consent in advance to a course of conduct which would otherwise result in his discharge." *Dunlap v. C. & S. DeKalb Bank,* 134 Ga. App. 893, 896(4) (216 SE2d 651) (1975); *Twisdale v. Ga. R. Bank,* 129 Ga. App. 18, 21 (198 SE2d 396) (1973). See First Nat. Park Bank v. Johnson, 553 F2d 599 (9th Cir. 1977). Indeed, in *McNulty v. Codd,* supra, we held that, notwithstanding the anti-waiver provision of Code Ann. § 109A-9—501 (3) (b), language in a guaranty agreement waiving the notice provisions of Code Ann. § 109A-9—504 (3) was "viable and enforceable" against the guarantor. Under the terms of the agreement in this action, Vickers ". . . as primary obligor, . . . unconditionally guarantee[d] to [Chrysler] that [Ray Dodge] . . . will . . . pay . . . all of [Ray Dodge's] present and future obligations owing to [Chrysler] . . ., and agree[d] without [Chrysler] first having to proceed against [Ray Dodge] or to liquidate paper or any security therefor, to pay on demand all sums due . . . and all losses, cost, attorney's fees which [Chrysler] may suffer by reason of [Ray Dodge's] default . . . [O]n demand to pay any deficiency established by a sale of any paper or security held by [Chrysler] . . . " Vickers further agreed that "[Chrysler] may without notice to [the guarantors] and without affecting or impairing the obligation of [the guarantors], . . . compound, compromise, collect, or otherwise liquidate any obligation or security therefor of [Ray Dodge] in any manner . . ." Accordingly, the agreement gave Chrysler the right to

proceed against Vickers without first proceeding against Ray Dodge *or* the collateral and Chrysler was entitled to release the collateral or liquidate the collateral "in any manner" without affecting Vickers' obligations. We hold that the waiver provisions of this guaranty agreement are not specifically barred under Code Ann. § 109A-9—501 (3) (b) and that by virtue of their broad language Vickers waived any protection to which he might otherwise have been entitled under Code Ann. § 109A-9—504 (3). Cf. *McNulty v. Codd,* supra; First Nat. Park Bank v. Johnson, supra. See also *Greene v. Bank of Upson,* 231 Ga. 287 (201 SE2d 463) (1973); *Vaughn v. Nat. Bank & Trust Co.,* 141 Ga. App. 897 (234 SE2d 718) (1977); *Walker v. Fendrich Indus.,* 148 Ga. App. 877 (253 SE2d 260) (1979) Compare Frederick v. United States, 386 F2d 481, 486 (5th Cir. 1967) wherein the guaranty agreement contained the provision that if the secured party should decide to pursue other remedies, it could do so only in a manner consistent with prevailing law. Since Vickers expressly waived his right to contest the manner in which Chrysler disposed of the collateral, the "commercial reasonableness" of the disposition of the collateral was not an issue of material fact precluding the grant of summary judgment.

2. Vickers also asserts a two-pronged attack upon that portion of the summary judgment awarding attorney's fees. First, Vickers contends that the notice was insufficient to comply with the requirements of Code Ann. § 20-506. Secondly, Vickers argues that certain language printed on the reverse side of the promissory note and trust receipt, the instrument upon which the notice pursuant to Code Ann. § 20-506 is predicated, "raises serious questions about the enforceability of the alleged indebtedness."

As previously noted, Ray Dodge's obligations under the loan' agreement with Chrysler was evidenced by a "main" promissory note in the principal amount of $400,000 and made payable on demand. In addition, each time that Chrysler made an advance Ray Dodge was required to execute another promissory note in the amount of the advance and a trust receipt granting Chrysler a security interest in the automobiles purchased with that particular advance. The "advance" promissory note and trust receipt were printed on a single sheet of paper with the promissory note above and separated from the trust receipt by a solid black line. On the reverse side of this instrument is the dealer's name and address, the serial number and other information identifying the automobile purchased and held by Ray Dodge pursuant to the trust receipt, the amount financed, and on the bottom left-hand corner the following typed language: "The promissory note on the reverse hereof *shall be deemed void* if the dealer's address shown above is located in the State of Georgia." The

dealer's address is clearly shown as Covington, Georgia.

The only notice appearing in the record on appeal which purports to comply with the provisions of Code Ann. § 20-506 is that contained in paragraph 13 of Chrysler's complaint. This notice is expressly predicated upon the attorney's fees provision contained in the "advance" promissory notes rather than the attorney's fees provisions in the "main" promissory note. In its brief, Chrysler concedes that the typewritten language appearing on the opposite side of the "advance" promissory note "voids the legal effect" of said note. Pretermitting a determination as to whether or not the notice in the complaint otherwise complied with the pertinent statutory requirements, we find the fact that the notice relied upon was predicated upon an unenforceable note precluded the trial court's award of attorney's fees.

3. The fact, however, that the "advance" promissory note is void does not, as Vickers contends, raise questions as to the enforceability of Chrysler's claims against Ray Dodge and, by virtue of the continuing guaranty, against Vickers. It is obvious that Ray Dodge's obligations to Chrysler and the allegations in the complaint relative thereto are based, for the most part, upon the revolving loan agreement as evidenced by the "main" promissory note in the principal sum of $400,000 and payable on demand by Chrysler. The "advance" promissory note was merely one of several instruments utilized to implement and facilitate the overall floorplan arrangement and underlying the primary obligation. The invalidity of the "advance" promissory note did not affect Ray Dodge's obligation to pay the "main" $400,000 note on demand. Demand for payment was made and the documents attached to the complaint including, but not limited to, the revolving loan agreement, the $400,000 promissory note, the assignment of parts, and continuing guaranty were sufficient to support the trial court's award for principal and interest.

4. Vickers also urges that the trial court erred in considering the affidavits of Mr. Ferris P. Hunter which were submitted in support of Chrysler's motion for summary judgment. Vickers contends that contrary to the rules of evidence the affidavits contained conclusions and summaries of records not available to the court and the parties, and made reference to documents which themselves were the highest and best evidence of their contents. Furthermore, Vickers asserts that he objected to the court's consideration of these affidavits at the time of the hearing on summary judgment.

In its brief on appeal, Chrysler denies that any objection to the affidavits was made at the time of the hearing. There is no transcript of the hearing on summary judgment and the record before us is void

of an indication that such objections were in fact made.

Code Ann. § 81A-156 (e) governs the form and content of affidavits supporting and opposing motions for summary judgment. Under that section affidavits must be made on the personal knowledge of the affiant and set forth such facts as would be admissible in evidence. "[T]he admissibility of evidence on motion for summary judgment, whether contained in affidavits or otherwise, is subject to the rules relating to the admissibility of evidence generally, so that evidence inadmissible on a hearing of the case would generally be inadmissible on motion for summary judgment. [Cit.]" *Thomasson v. Trust Co. Bank,* 149 Ga. App. 556, 557 (254 SE2d 881) (1979). "[T]o the extent that [an affidavit] contains material which would not be admissible in evidence it is subject to a motion to strike. But a motion to strike must be timely or the objection is waived." *Vaughn & Co. v. Saul,* 143 Ga. App. 74, 78 (237 SE2d 622) (1977); see also *Ford v. Ga. Power Co.,* 151 Ga. App. 748 (2) (A) (261 SE2d 474) (1979).

Even assuming that Vickers did pose certain objections to the affidavits at the hearing, we do not believe that the court's consideration of them militates against the grant of summary judgment in the instant case. Where motions to strike affidavits are made, " '[t]he trial judge may consider such affidavits, and he is bound by the uncontradicted evidentiary matter in such affidavits, irrespective of the opinions, ultimate facts, and conclusion of law stated therein.' [Cit.]" *Ford v. Ga. Power Co.,* supra at 749 (B). Thus, the mere fact that the affidavits in question might contain certain averments which could be characterized as conclusions and hearsay, did not prohibit the trial judge from considering the admissible parts thereof and from granting summary judgment if appropriate. Contrary to Vickers' contention, we believe that the "Statement of Wholesale Account," attached to one of the affidavits, was properly admitted under the Business Records Act, Code Ann. § 38-711 and considered by the trial judge. The affidavit met the conditions precedent to the admissibility of such evidence as set forth under Code Ann. § 38-711. See *Vaughn & Co. v. Saul,* supra (3); Compare *Thomasson v. Trust Co. Bank,* supra. Therefore, this second enumeration of error is without merit.

Construing all the admissible evidence submitted on the motion for summary judgment most favorably for Vickers, who admitted execution of the guaranty agreement, Chrysler established a prima facie showing that it was entitled to judgment in the amount of $25,765.54. The affidavit submitted on behalf of Chrysler pierced the general denial of Vickers and the affidavits submitted on behalf of Vickers failed to set forth specific facts showing that genuine issues of

fact remained for determination by the trior of fact. Thus, the trial court did not err in granting Chrysler's motion for summary judgment in such amount. *Wilson v. Baxley State Bank,* 155 Ga. App. 507 (271 SE2d 655) (1980); *Meade v. Heimanson,* 239 Ga. 177, 180 (236 SE2d 357) (1977); *Ambrose v. E. F. Hutton & Co.,* 146 Ga. App. 403, 404 (246 SE2d 423) (1978). However, for the reasons set forth in Division 2 of this opinion, the trial court did err in extending its grant of summary judgment to include attorney's fees. Accordingly, leave is given Chrysler to write off the attorney's fees portion of the judgment within ten days after the filing of the remittitur in the court below. Upon so doing, the judgment will be affirmed. Otherwise, the judgment will be reversed. *Holt v. Rickett,* 143 Ga. App. 337 (4) (238 SE2d 706) (1977); *Walton v. Johnson,* 213 Ga. 108 (3) (97 SE2d 310) (1957).

*Judgment affirmed on condition. Deen, P. J., and Banke, J., concur.*

DECIDED APRIL 15, 1981 —
REHEARING DENIED MAY 4, 1981

*Joseph R. Baker,* for appellant.
*Frank E. Jenkins III, Stephen A. Land, Gregory J. Digel,* for appellee.