785 F.2d 1553
 42 UCC Rep.Serv. 1888
 In re Millard KENNEDY and Glenwodyne B. Kennedy, Debtors.
UNITED STATES of America, on Behalf of FARMERS HOME
ADMINISTRATION, Plaintiffs-Appellants,
v.
Millard KENNEDY and Glenwodyne B. Kennedy, Defendants-Appellees.
 No. 85-8271.
 United States Court of Appeals,
Eleventh Circuit.
 April 8, 1986.
 
 Lillian H. Lockary, Asst. U.S. Atty., Macon, Ga., for plaintiffs-appellants.
 Richard A. Childs, Columbus, Ga., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Georgia.
 Before HILL and FAY, Circuit Judges, and TUTTLE, Senior Circuit Judge.
 HILL, Circuit Judge:
 
 
 1
 This case presents the question whether the Farmers Home Administration ("FmHA") can proceed against an accommodation endorser's deed to secure debt after FmHA violated the notice requirements of O.C.G.A. Sec. 11-9-504(3) (1982) when it disposed of the principal debtor's chattels. A state law question that the Georgia courts have yet to address will be dispositive; we therefore certify that question to the Georgia Supreme Court.
 
 FACTS
 
 2
 FmHA made three emergency loans to Daniel S. Kennedy ("Daniel") on April 25, 1979, in the principal sums of $65,000, $23,600 and $10,850,[1] evidenced by separate promissory notes. Daniel also executed a security agreement covering chattels and crops.[2] On that same date, Daniel's parents, appellees Millard and Glenwodyne B. Kennedy ("the Kennedys"), endorsed Daniel's promissory notes, gave FmHA a second deed to secure debt covering their real property in Webster County, Georgia, and executed a document expressing the voluntariness of this conveyance and their intention to induce FmHA to make the loans to Daniel.[3]
 
 
 3
 Daniel subsequently defaulted on his loans and filed for liquidation under Chapter 7 of the Bankruptcy Code. During the creditors' meeting, both Daniel and the Chapter 7 trustee relinquished Daniel's collateral, all personalty, to FmHA. FmHA subsequently sold the collateral without notice to either Daniel or the Kennedys and sought to proceed against the Kennedys' real property for the balance remaining on Daniel's notes. The Kennedys filed for reorganization under Chapter 11 of the Bankruptcy Code and the proceeds of the sale of a portion of their real property subject to FmHA liens were placed in escrow pending resolution of this dispute. The bankruptcy court ruled that FmHA could not recover any deficiency on Daniel's notes and voided the Kennedys' second security deed because FmHA did not give notice to Daniel and the Kennedys of the sale of Daniel's personalty as required by O.C.G.A. Sec. 11-9-504(3). The district court affirmed the bankruptcy court's rulings.
 
 
 4
 FmHA appealed, contending that Daniel and the Kennedys were not entitled to notice for three reasons: O.C.G.A. Sec. 11-9-504(3) does not apply to real estate liens, Daniel and the Kennedys had waived notice and, in any case, federal law preempts Georgia notice requirements.
 
 DISCUSSION
 
 5
 Before certifying this case, we must determine whether federal law preempts the Georgia notice requirement and whether the Kennedys waived any right to notice.
 
 I. Waiver of Right to Notice
 
 6
 Assuming state law applies, FmHA argues that the Kennedys are not entitled to notice because they waived the right to notice. The first aspect of FmHA's argument is that the Kennedys' right to notice, if any, derives solely from Daniel's rights; if Daniel waived this right, the Kennedys were not entitled to notice. FmHA claims Daniel waived his right to notice in two ways: first, by the waiver provision in his security agreements and also by abandoning his collateral at the creditors' meeting.[4] Regardless of the effect of these actions on Daniel's rights, they did not waive the Kennedys' right to notice. In Reeves v. Habersham Bank, 331 S.E.2d 589, 596 (Ga.1985), the Georgia Supreme Court held that guarantors are "debtors" within the meaning of O.C.G.A. Sec. 11-9-504(3) and entitled to notice of sale. As a result, the Kennedys were entitled to notice unless they waived that right.
 
 
 7
 Next, FmHA contends the Kennedys waived their right to notice by endorsing Daniels' notes and that such a pre-default waiver is enforceable under the authority of Vickers v. Chrysler Credit Corp., 158 Ga.App. 434, 280 S.E.2d 842, 845-46 (1981), which held that guarantors are not protected by the anti-waiver provisions of O.C.G.A. Sec. 11-9-501(3)(b) (1982) and may waive notice before default.[5] In Vickers, however, the guaranty agreement contained a provision which expressly waived notice and the right to contest the commercial reasonableness of the disposition of collateral. Id. There is no such contractual waiver in this case. The Kennedys endorsed Daniel's notes and signed their deed to secure debt, none of which contained waiver provisions or incorporated the terms of the security agreements. FmHA contends that the Kennedys were bound to the security agreements' waiver provisions because each promissory note was expressly subject to FmHA regulations which permitted sale in accordance with the terms of the security agreements. We find this reasoning circuitous; the link between the notes the Kennedys endorsed and the security agreements is too tenuous to bind the Kennedys to the security agreements' waiver provisions. We therefore hold the Kennedys did not waive their right to notice under O.C.G.A. Sec. 11-9-504(3).
 
 II. Federal Preemption
 
 8
 FmHA also argues that the O.C.G.A. Sec. 11-9-504(3) notice requirements are prempted by federal law. Federal preemption of state law may be either express or implied, and may be complete or partial. Partial preemption occurs when a specific area of state law actually conflicts with federal law. Fidelity Federal Savings & Loan Association v. De la Cuesta, 458 U.S. 141, 152-53, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). Such a conflict occurs when " 'compliance with both federal and state regulations is a physical impossibility,' or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " Id. at 153, 102 S.Ct. at 3022 (citations omitted). Federal regulations have the same preemptive effect as federal statutes. Id.
 
 
 9
 FmHA claims that two specific regulations, 7 C.F.R. Sec. 1962.2(a) (1985) and 7 C.F.R. Sec. 1962.42(c)(5)(i) (1985), and a clause in the security agreements preempt state notice requirements. Section 1962.2(a) provides that "security will be serviced in accordance with the security instruments and related agreements...." Paragraph IV.B.2(b) in each of Daniel's security agreements provides that "Debtor hereby ... waives all notices...." (R2-333). Section 1962.42(c)(5)(i) contains the following provisions regarding sale of collateral and notice:
 
 
 10
 (c) Sale. Repossessed property may be sold by FmHA at public or private sale for cash under Form FmHA 455-4, Form FmHA 441-19, the power of sale in security agreements under the UCC or in crop and chattel mortgages and similar instruments if authorized by a State supplement. Also, repossessed property may be sold at private sale when the borrower executes Form FmHA 455-11. "Bill of Sale 'B' (Sale by Private Party)."
 
 
 11
 ....
 
 
 12
 (5) Notice. (i) Notice of public or private sale of repossessed property when required will be given to the borrower and to any party who has filed a financing statement or who is known by the County Supervisor to have a security interest in the property, except as set forth below. The notice will be delivered or mailed so that it will reach the borrower and any lienholder at least 5 days (or longer time if specified by a State supplement) before the time of any public sale or the time after which any private sale will be held. Form FmHA 455-8, "Notice of Sale," may be used for public or private sales.
 
 
 13
 (A) Notice to the borrower of [sic] lienholder is not required when the property is sold under Form FmHA 455-4 because the parties are placed on notice when they execute the form. When the sale involves only collateral which is perishable, will decline quickly in value, or is a type customarily sold on a recognized market, notice is not required but may be given if time permits to maintain good public relations.
 
 
 14
 (B) Notice only to lienholder is required when repossessed property is sold at private sale and the borrower executes Form FmHA 455-11.
 
 
 15
 (C) If the property is to be sold under a chattel mortgage, the manner of notice will be set forth in a State supplement or on an individual case basis.
 
 
 16
 7 C.F.R. Sec. 1962.42(c)(5)(i) (emphasis added). Section 1962.42 does not specify when notice is required. Likewise, Part 1962, which governs servicing and liquidation of chattel security, does not contain any further explanation of the notice requirements. FmHA argues that Sections 1962.2(a) and 1962.42(c)(5)(i) should be read in conjunction to mean notice must be given "when required" by the applicable security instrument. Since Daniel's security agreements waived the right to notice, FmHA argues the regulations and security agreement expressly preempted state law.[6]
 
 
 17
 In support of its position, FmHA argues the court should follow United States v. Jones, 707 F.2d 1334 (11th Cir.1983). In Jones, a co-guarantor argued the Small Business Administration's ("SBA") deficiency claims were barred because he did not receive notice of sale. The Court found Jones had waived notice of sale because the applicable regulation provided collateral could be sold in accordance with the terms of the note or security instrument, the note waived notice and Jones' guaranty was expressly subject to the terms of the note. Id. at 1337. For two reasons, Jones does not apply in this case. First, the Kennedys did not contractually waive their right to notice. Second, Jones did not decide whether the SBA regulation preempted state law. In fact, such a decision would have been superfluous because Jones' waiver would have been enforceable under Vickers v. Chrysler Credit Corp., 280 S.E.2d at 845-46.
 
 
 18
 The language of sections 1962.2(a) and 1962.42(c)(5)(i) is ambiguous; it neither directly incorporates nor expressly preempts state law. Moreover, we cannot find in these sections an unambiguous intent to preempt state notice requirements. We can resolve the ambiguity by reference to the FmHA regulations as a whole. One of the general regulations, applicable to all FmHA lending programs, provides that "[i]n order to implement and facilitate these federal loan programs, the application of local procedures, especially for recordation and notification purposes, may be used to the fullest extent feasible and practicable." 7 C.F.R. Sec. 1900.102(c) (1985). In order to accommodate state procedures, FmHA uses "state supplements." See e.g., 7 C.F.R. Secs. 1962.5(c)(3) and (d), 1962.6(b), 1962.8(b), 1962.9, 1962.42(c) (1985). State supplements are prepared as necessary to comply with state laws. 7 C.F.R. Sec. 1965.94 (1985). Since the regulations do not provide specific notice requirements and are intended to accommodate state procedures, we find no conflict between federal and state law. Cf. United States v. Kimbell Foods, Inc., 440 U.S. 715, 729-33, 99 S.Ct. 1448, 1459-61, 59 L.Ed.2d 711 (1979) (state lien priority law would not interfere with administration of FmHA loan programs because FmHA regulations incorporate state law and FmHA uses local offices familiar with state law). We therefore conclude that 7 C.F.R. Secs. 1962.2(a) and 1962.42(c)(5)(i) do not expressly or impliedly preempt state notice requirements.
 
 
 19
 III. Applicability of O.C.G.A. Sec. 11-9-504(3)
 
 
 20
 The primary focus of FmHA's argument is that Georgia real property law, not O.C.G.A. Sec. 11-9-504(3), should control this case because it is not seeking a personal judgment against the Kennedys but is instead proceeding under the deed to secure debt. The Georgia Supreme Court recently held that section 11-9-504(3) draws no distinction between a deficiency judgment and recovery against other collateral:
 
 
 21
 The Georgia rule concerning the recovery of a deficiency after a foreclosure sale of collateral is that, if the creditor does not comply with the requirements of OCGA Sec. 11-9-504(3), he loses his right to recover a deficiency, not merely his right to recover a personal judgment against the debtor. This rule is not predicated on the method of the recovery of the deficiency, and we decline to make such a distinction now.
 
 
 22
 Reeves v. Habersham Bank, 331 S.E.2d at 593 (citations omitted). In Reeves, however, the creditor sought to proceed against a guarantor's personal property collateral after a commercially unreasonable disposition of the principal debtor's collateral. Id. at 592-93. FmHA argues a different result is required here because the guarantors' collateral is real property not governed by O.C.G.A. Sec. 11-9-504(3). The Georgia courts have not addressed this issue.
 
 
 23
 Since the only issue remaining to be resolved is a novel question of state law, we think it proper to certify this case. We ordinarily request the parties to submit a proposed statement of facts and certificate of issues for decision before certifying a case; however, in view of the substantial agreement between the parties as to the issue to be decided, we need not do that here. We therefore certify the following facts and issue for decision by the Georgia Supreme Court.
 
 
 24
 CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA, PURSUANT TO ARTICLE 6 SECTION 6 PARAGRAPH IV OF THE GEORGIA CONSTITUTION.
 
 
 25
 TO THE SUPREME COURT OF GEORGIA AND THE HONORABLE JUSTICES THEREOF:
 
 I. Style of the Case
 
 26
 The style of the case in which this certificate is made is as follows: IN RE: Millard Kennedy and Glenwodyne B. Kennedy, Debtors. United States of America, on behalf of Farmers Home Administration, Plaintiffs-Appellants v. Millard Kennedy and Glenwodyne B. Kennedy, Defendants-Appellees, case no. 85-8271, United States Court of Appeals for the Eleventh Circuit, on appeal from the United States District Court for the Middle District of Georgia.
 
 II. Statement of Facts
 
 27
 The facts are stated in our opinion above resolving the initial question of the applicability of federal law; we incorporate them here by reference.
 
 
 28
 III. Question to be Certified to the Georgia Supreme Court
 
 
 29
 Whether the bar against collection of any deficiency if a sale of collateral occurs without notice, in violation of O.C.G.A. Sec. 11-9-504(3), prevents a creditor holding a claim secured by both personal property and real property from proceeding against the real estate to collect the balance remaining after a commercially unreasonable sale of the personalty.
 
 
 30
 Our statement of the question is not designed to limit the inquiry of the Supreme Court of Georgia.
 
 
 31
 [T]he particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.
 
 
 32
 Martinez v. Rodriguez, 394 F.2d 156, 159 n. 6 (5th Cir.1968).
 
 
 33
 The entire record in the cases, along with copies of the briefs of the parties, are transmitted herewith.
 
 
 34
 CERTIFIED.
 
 
 
 [1]
 The loan in the principal amount of $10,850 was previously disallowed by the bankruptcy court, no appeal was taken, and it is not in issue
 
 
 [2]
 Daniel subsequently executed additional security agreements dated April 14, 1981, and March 9, 1982
 
 
 [3]
 The Kennedys also had outstanding loans with FmHA, secured by a first deed to secure debt covering the Kennedy's real property in Webster County, Georgia. These loans and the validity of the first deed to secure debt are not in dispute
 
 
 [4]
 Section IV.B.2(b) of Daniel's security agreements provided that, upon default, "[d]ebtor ... waives all notices, exemptions, compulsory disposition and redemption rights." (R2-333)
 
 
 [5]
 A recent Georgia case may have changed this rule. In Reeves v. Habersham Bank, 331 S.E.2d 589, 596 (Ga.1985) the Georgia Supreme Court held a guarantor is a "debtor" for purposes of O.C.G.A. Sec. 11-9-504(3) and thus entitled to notice. Reeves did not, however, decide whether a guarantor is a "debtor" for purposes of the anti-waiver rule. Because we hold the Kennedys did not waive their right to notice, it is unnecessary to certify this question to the Georgia Supreme Court
 
 
 [6]
 Moreover, FmHA claims the Kennedys are not entitled to notice even if the regulations incorporate state law because section 1962.42(c)(5)(i) limits notice to the "borrower" and parties who hold a security interest in the property. Part 1962 does not define "borrower." The Kennedys endorsed Daniel's notes and their deed to secure debt refers to them as borrowers. We find they would be entitled to notice as borrowers