43396. UNITED STATES OF AMERICA, ON BEHALF OF FARMERS HOME ADMINISTRATION v. KENNEDY et al.
(348 SE2d 636)

HUNT, Justice.

This case comes before this court on a certified question from the United States Court of Appeals for the Eleventh Circuit. The facts as set out by that court, and the question, follow:

"FmHA made three emergency loans to Daniel S. Kennedy ('Daniel') on April 25, 1979, in the principal sums of $65,000, $23,600 and $10,850,[1] evidenced by separate promissory notes. Daniel also executed a security agreement covering chattels and crops.[2] On that same date, Daniel's parents, appellees Millard and Glenwodyne B. Kennedy ('the Kennedys'), endorsed Daniel's promissory notes, gave FmHA a second deed to secure debt covering their real property in Webster County, Georgia, and executed a document expressing the voluntariness of this conveyance and their intention to induce FmHA to make the loans to Daniel.[3]

"Daniel subsequently defaulted on his loans and filed for liquidation under Chapter 7 of the Bankruptcy Code. During the creditors' meeting, both Daniel and the Chapter 7 trustee relinquished Daniel's collateral, all personalty, to FmHA. FmHA subsequently sold the collateral without notice to either Daniel or the Kennedys and sought to proceed against the Kennedys' real property for the balance remaining on Daniel's notes. The Kennedys filed for reorganization under

---

"[1] The loan in the principal amount of $10,850 was previously disallowed by the bankruptcy court, no appeal was taken, and it is not in issue."

"[2] Daniel subsequently executed additional security agreements dated April 14, 1981, and March 9, 1982."

"[3] The Kennedys also had outstanding loans with FmHA, secured by a first deed to secure debt covering the Kennedy's real property in Webster County, Georgia. These loans and the validity of the first deed to secure debt are not in dispute."

Chapter 11 of the Bankruptcy Code and the proceeds of the sale of a portion of their real property subject to FmHA liens were placed in escrow pending resolution of this dispute. The bankruptcy court ruled that FmHA could not recover any deficiency on Daniel's notes and voided the Kennedys' second security deed because FmHA did not give notice to Daniel and the Kennedys of the sale of Daniel's personalty as required by OCGA § 11-9-504 (3). The district court affirmed the bankruptcy court's rulings.

"FmHA appealed, contending that Daniel and the Kennedys were not entitled to notice for three reasons: OCGA § 11-9-504 (3) does not apply to real estate liens, Daniel and the Kennedys had waived notice and, in any case, federal law preempts Georgia notice requirements."

After determining that federal law does not preempt Georgia notice requirements and that the Kennedys did not waive their right to notice under OCGA § 11-9-504 (3), the court addressed the applicability of OCGA § 11-9-504 (3) to this case, as follows:

"The primary focus of FmHA's argument is that Georgia real property law, not OCGA § 11-9-504 (3), should control this case because it is not seeking a personal judgment against the Kennedys but is instead proceeding under the deed to secure debt. The Georgia Supreme Court recently held that section 11-9-504 (3) draws no distinction between a deficiency judgment and recovery against other collateral: 'The Georgia rule concerning the recovery of a deficiency after a foreclosure sale of collateral is that, if the creditor does not comply with the requirements of OCGA § 11-9-504 (3), he loses his right to recover a deficiency, not merely his right to recover a personal judgment against the debtor. This rule is not predicated on the method of the recovery of the deficiency, and we decline to make such a distinction now.' *Reeves v. Habersham Bank*, 331 SE2d at 593 (citations omitted). In *Reeves*, however, the creditor sought to proceed against a guarantor's personal property collateral after a commercially unreasonable disposition of the principal debtor's collateral. Id. at 592-93. FmHA argues a different result is required here because the guarantors' collateral is real property not governed by OCGA § 11-9-504 (3). The Georgia courts have not addressed this issue."

The court then certified the following question to this court: "Whether the bar against collection of any deficiency if a sale of collateral occurs without notice, in violation of OCGA § 11-9-504 (3), prevents a creditor holding a claim secured by both personal property and real property from proceeding against the real estate to collect the balance remaining after a commercially unreasonable sale of the personalty."

1. In *Reeves v. Habersham Bank*, supra, 254 Ga. 615, 621 (1985), we recognized the reasons that underlie the requirements of OCGA §

11-9-504 (3) that a debtor be given reasonable notification of the time and place of the sale of collateral. While those reasons are obvious, they bear reiterating because they lie at the heart of the controversy. First, if the debtor feels the collateral is not bringing a reasonable price he can buy it (or in appropriate cases exercise his right of redemption). OCGA § 11-9-506. Second, he can challenge any aspects of the disposition before it is made. Finally, he can seek out other purchasers in an effort to obtain a good price. All of these, of course, further the same ultimate goal: they allow the debtor to minimize any deficiency for which he will be liable by maximizing the sale price of the collateral. In fact, the statute simply creates a rule of fairness. It allows the debtor, whose protection from liability for a deficiency is the value of the collateral, to maintain that protection. It is obvious, then, that the debtor's interest in the disposition of the collateral is the same whether his own property which is subject to suit on the deficiency is personalty or realty.

2. Analysis of the language of the statute, OCGA § 11-9-501 et seq., also supports the appellees' contention that FmHA's failure to give them notice of the sale of the collateral vitiates FmHA's right to proceed against them for the deficiency, even though their guaranty is secured by realty.

OCGA § 11-9-501 (1) provides that: "When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this part and except as limited by subsection (3) of this Code section those provided in the security agreement." Subsection (3) (b) incorporates the restrictions of OCGA § 11-9-504 (3) relating to the disposition of collateral.

We recognize that with respect to the collateral, OCGA § 11-9-501 (4) provides that: "If the security agreement covers both real and personal property, the secured party may proceed under this part as to the personal property or he may proceed as to both the real and the personal property in accordance with his rights and remedies in respect of the real property in which case the provisions of this part do not apply." It is clear that the last clause — "in which case the provisions of this part do not apply" — is itself applicable only where the creditor proceeds "as to both the real and the personal property in accordance with his rights and remedies in respect of the real property. . . ." That, of course, is not the case here.

Turning to OCGA § 11-9-504 (3), we discern no indication on the face of that subsection that it does not apply on the facts of this case. As we held in *Reeves v. Habersham Bank*, supra, 254 Ga. at 618, where the creditor fails to comply with OCGA § 11-9-504 (3), he loses the right to recover a deficiency. We conclude that where a sale of collateral occurs without notice, in violation of OCGA § 11-9-504 (3), the bar against collection of a deficiency upon the debt secured by

such collateral prevents a creditor holding a claim against a guarantor secured by real property from proceeding against the real estate to collect the balance remaining after a commercially unreasonable sale of the personalty.

*Certified question answered in the affirmative. All the Justices concur.*

DECIDED OCTOBER 8, 1986 —
RECONSIDERATION DENIED OCTOBER 28, 1986.

*Joe D. Whitley, Lillian H. Lockary,* for appellant.
*Swearingen, Childs & Phillips, Richard A. Childs,* for appellees.